UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| TIMOTHY MILLER | * | CIVIL ACTION |
| VERSUS | * | NO. 05-4239 |
| MCELWEE BROTHERS, INC., ET AL. | * | SECTION "L"(5) |

ORDER AND REASONS

Before the Court is Defendant United States of America's (the "United States") Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Rec. Doc. No. 24). For the following reasons the motion is GRANTED.

I.      Factual and Procedural Background

This case arises out of an alleged injury the Plaintiff claims he sustained on March 6, 2003. The Plaintiff, an employee of Hertz Rental Co., contends he was injured while he was delivering materials at a construction site and stepped into a sinkhole. The construction, part of the Southeast Louisiana Flood Control Project, was performed pursuant to a contract (the "Contract") between the United States, through the United States Army Corps of Engineers (the "Corps"), and a joint venture composed of McElwee Brothers, Inc. ("McElwee"), Tri-State Design Construction Company, Inc. and Tri-State Road Boring, Inc. (together, "Tri-State"). The contract called for McElwee and Tri-State to make improvements to the pump and canal system which transported water from the Dwyer Road Drainage Pumping Station in Orleans Parish to the Inner Harbor Navigational Canal ("INHC"), including construction of three discharge tubes running from the Dwyer Road Pumping Station to the INHC.

The Plaintiff claims that he visited the construction site on March 6, 2003 at approximately 5:30 a.m. to deliver rental pumps and inspect and service other rental pumps

already installed at the site. He states that he was injured when he fell into a sinkhole at the site, allegedly in the vicinity of one of the Hertz pumps he was inspecting. The Plaintiff claims that the sinkhole had formed after the construction workers bore under railroad tracks to install the discharge tubes.

No other person witnessed the accident. The Plaintiff states that he reported the accident to Ellis Jackson, McElwee's site superintendent, and that a McElwee crane operator and another employee were present at the time of his accident report. However, no Corps employee was present at this time. Steve Falati, the Corps' Quality Assurance Representative, arrived at the site at approximately 6:30 a.m., one hour after the accident allegedly occurred. Mr. Falati states that no one informed him that an accident had occurred earlier that morning. Mr. Falati had also been at the construction site the day before, March 5, 2006, and claims that he did not observe any sinkholes present when he left that day.

Seeking compensation for his alleged injuries, the Plaintiff filed an administrative claim with the Corps on March 3, 2004. The Corps subsequently denied his claim in a letter dated March 3, 2005. The Plaintiff then commenced this present action on September 26, 2005, alleging claims of negligence and strict liability against the United States, McElwee, Tri-State, subcontractor Glavin Construction Management Company, the Sewerage and Water Board of New Orleans, and several insurance companies.[1] On September 16, 2006, the United States filed a Motion to Dismiss, or alternatively, Motion for Summary Judgment.

After a series of continuances at the request of the parties, the Plaintiff filed a

---

[1] By Order of the Court, the United States of America was substituted as a defendant for the United States Army Corps of Engineers and the United States Corps of Engineers was dismissed from this suit (Rec. Doc. No. 66).

memorandum in opposition.  The Plaintiff's opposition included the argument that a motion for summary judgment was premature as the Plaintiff had insufficient time to conduct discovery in the case, including a lack of opportunity to depose employees of the United States.  The Court thereafter granted an additional continuance until April 25, 2007, at the request of the United States.  This continuance was provided so that the Plaintiff would be afforded sufficient time to conduct discovery, including deposing United States employees, and so that the Plaintiff would be permitted to file a supplemental memorandum in opposition.

However, the Plaintiff has not conducted any additional discovery, deposed any United States employees nor filed any supplemental memoranda. The United States did, however, file a supplemental memorandum in support of its motion.  Accordingly, having given the parties sufficient time to fully discover the issues, the Court is ready to rule.

**II.     Motion**

The United States brings this motion contending that the Court lacks subject matter jurisdiction over the Plaintiff's claims against the United States.  The United States claims that though it has waived its sovereign immunity from suit for certain tort actions brought under the Federal Tort Claims Act ("FTCA"), in this case, the Plaintiff's tort action falls within exceptions to the FTCA's waiver.  Specifically, the United States contends that it has not waived its sovereign immunity for acts of its independent contractors, nor for tort actions based upon strict liability or premises liability, and thus the claims against it must be dismissed.  Alternatively, the United States argues that summary judgment should be granted in its favor, and there are no genuine issues in dispute regarding the fact that no employee of the United States acting within the scope of his or her employment committed any acts causing Plaintiff's alleged injuries.

In response, the Plaintiff claims that the action falls within the waiver under the FTCA because his claims address an injury caused by a United States employee's negligence. Specifically, the Plaintiff alleges, in his memorandum in opposition, that Mr. Falati was required to inspect the job site for sink holes and other hazardous conditions and to forward this information to the United States so that any such problem could be fixed.

### III.  The Plaintiffs' Claims

In his amended complaint, the Plaintiff alleges that his fall was a direct result of the gross negligence of McElwee, Tri State, the Corps, the Sewerage and Water Board and/or Glavin for failing to maintain safe premises; failing to repair defective grounds; failing to warn of possible danger; in allowing a negligent and hazardous situation and conditions to exist; failing to discover the hazardous situation; failing to use proper maintenance of the property and grounds to assure its safe use; failing to use proper care in working the area of the episode; failing to properly inspect said property and grounds to assure that it was fit for its intended purpose; acting in a careless and negligent manner without regard for the suffering of others; and other acts of negligence of omissions.

The Plaintiff further avers that these Defendants are strictly liable for the grounds on which they own and control, at all times pertinent, and that all of the Defendants' acts of negligence are in violation of Louisiana Civil Code Articles 2315, 2316 and 2317 and Orleans Parish ordinances.

The United States argues that the Plaintiff's complaint does not mention any specific federal employee who negligently caused his injuries, nor has one been revealed through discovery.  The United States argues that the FTCA requires the Plaintiff to assert more than the

general negligence of the Government, but rather the Plaintiff must focus on specific acts of a Government employee.

## IV.     Legal Standards

### A.     Standard for Motion to Dismiss

A party may challenge the subject matter jurisdiction of the Court pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. "Lack of subject matter jurisdiction may be found in any of one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle the plaintiff to relief." *Id.* If a district court is presented with a motion to dismiss with a motion for summary judgment in the alternative, the court's first inquiry must be whether subject matter jurisdiction exists before it can continue with a determination as to whether summary judgment should be granted or not. *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1157 (5th Cir. 1981).

> When a defendant makes a factual attack on the court's jurisdiction, the plaintiff must prove the existence of subject matter jurisdiction by a preponderance of the evidence. An attack is factual rather than facial if the defendant submits affidavits, testimony, or other evidentiary materials. The plaintiff is obliged to submit facts through some evidentiary method to sustain his burden of proof.

*Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989).

B.     **Standard for Motion for Summary Judgment**

Summary Judgment is granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the outcome of the suit under governing law[.]" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must review the facts "drawing inferences in a manner most favorable to the nonmoving party." *See General Universal Systems, Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). A moving party must demonstrate an absence of genuine issues of material fact, meaning "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the party moving for summary judgment demonstrates such absence, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Willis v. Roche Biomedical Laboratories, Inc.*, 61 F.3d 313, 315 (5th Cir. 1995).

V.     **The Federal Tort Claims Act**

The Unites States, as sovereign, is immune from suit, unless it expressly consents to be sued. *See McMahon v. United States*, 342 U.S. 25 (1951); *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994). The Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346, *et seq.* imparts such consent for limited types of claims. The FTCA provides that "district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . for injury or loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).

This provision, then, subjects the United States to liability to the same extent as a private party for personal injury or property loss caused by the negligence of Government employee in the course and scope of their employment.  An "employee of the Government" is statutorily defined to include "officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency . . . " 28 U.S.C. § 2671. "'Federal agency' includes the executive departments and independent establishment of the United States, ... but does not include any contractor with the United States." *Id.*

The United States Supreme Court, applying a strict construction to the FTCA, as it does to all statutes waiving sovereign immunity, has expressly held that the Unites States is not liable for the negligence of independent contractors.  *Logue v. United States*, 412 U.S. 521 (1973); *Levrie v. Dept. of Army*, 810 F.2d 1311, 1314 (5th Cir. 1987), and this exception to the FTCA waiver of sovereign immunity takes precedence over state law.  *Id.*  "A critical element in distinguishing an agency from a contractor is the power of the [United States] to 'control the detailed physical performance of the contractor.'" *Logue*, 412 U.S. at 528.  The essence of the question "is not whether the ... agency receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government." *United States v. Orleans*, 425 U.S. 807, 813-15 (1976) (cited in *Robbins v. Computer Serv. Corp.*, __F.Supp.2d__, 2007 WL 1106146, at *3 (S.D. Miss. Apr. 11, 2007).  "If all the United States retains is the right to inspect progress, to provide advice on contract provisions, and to order work stopped for safety violations, this type of control does not impute liability on the United States." *Id.* (citing *Alexander v. United States*, 605 F.2d 828, 833 (5th Cir. 1979)).

Moreover, the FTCA does not permit the United States to be sued for claims based on strict

liability. *Lively v. United States*, 870 F.2d 296 (5th Cir. 1989); *Giles v. U.S. Dept. Of Housing & Urban Development*, 1997 WL 218215, at *2 (E.D. La. Apr. 30, 1997). While, the Fifth Circuit has not spoken directly as to whether the FTCA exclusion includes suits for general premises liability, district courts within this Circuit are split on this issue. *Compare Perkins v. United States*, 1999 WL 148442, *2 (E.D. La. Mar. 17, 1999) ("[A]lthough the Fifth Circuit has not addressed the issue...I agree...that the FTCA does not permit suits for general premises liability to the extent that such theories resemble strict liability."); *Cupit v. United States*, 964 F.Supp. 1104, 1112 (W.D. La. 1997) (dismissing claims against United States "to the extent that they are founded on general state law premises liability."); *Charles v. United States Postal Service*, 2007 WL 925899, *3-*5 (E.D. La. Mar. 13, 2007) ("[T]he FTCA does not permit claims alleging premises liability, but does permit claims of negligence where specific government employees are alleged to be negligent.") *with Jamison v. United States*, __F.Supp.2d___, 2007 WL 1670986 (W.D. La. June 5, 2007).

## VI.    Law and Analysis

### A.    Independent Contractor Exemption

The United States contends that the independent contractor exception bars the Plaintiff's complaint. As stated above, the United States is not liable for the negligence of its independent contractors. "A critical factor in identifying a contractor 'is the power of the Federal Government to control the detailed physical performance of the contractor." *Broussard v. United States*, 989 F.2d 171, 174 (5th Cir. 1993) (internal quotation marks omitted). Also, the fact that the Untied States retains the right to inspection, including for safety violations, does not defeat the independent contractor exception unless the government actually supervises the contractor's day-to-day activities. *Guile v. United States*, 422 F.3d 221, 229 n.10 (5th Cir. 2005) (*citing Williams v.*

*United States*, 50 F.3d 299, 306-07 (4th Cir. 1995); *Brooks v. A.R.&S. Enters., Inc.*, 622 F.2d 8, 12 (1st Cir. 1980));  *Martinez v. United States*, 661 F. Supp. 762, 764 (S.D. Tex. 1987) (*citing Lipka v. U.S.*, 369 F.2d 288, 291 (2d Cir. 1966)); *see also Bennett v. United States*, Civ. A. No. 00-712, 2001 WL 417798, *4 (E.D. La. April 20, 2001) (stating that fact that the Government reserved the specific right to stop work for safety violations is not enough to impose liability).

In determining whether an individual is an employee or an independent contract, the following factors are relevant: (1) the extent of control which, by agreement, the master may exercise over the details of the work; (2) whether or not the one employed is engaged in a distinct occupation or business; (3) the kind of occupation, with reference to whether the work is usually done under the direction of the employer or by a specialist without supervision; (4) the skill required in the particular occupation; (5) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work; (6) the length of time for which the person is employed; (7) the method of payment, whether by the time or by the job; (8) whether or not the parties believe they are creating the relation of master and servant; and (9) whether the principal is or is not in business.  *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998) (*citing* Restatement (Second) of Agency § 220 (1958)).

With respect to the first factor, the Contract contains several provisions that indicate that the United States had little control over the details of the work.  The Contract incorporates several provisions of the Code of Federal Regulations which indicate that McElwee/Tri-State was an independent contractor.  Specifically, the Contract provides that McElwee/Tri-State was "responsible for all materials delivered and work performed until completion and acceptance of the entire work."  Roth Decl., Attach. A**,** Contract No. DACW29-01-C-0035, Section 700

(incorporating 48 C.F.R. §52.236-7). The Contract also provides that McElwee/Tri-State was to "directly superintend the work or assign and have on the work a competent superintendent who is satisfactory to the Contracting Officer and has authority to act for the Contractor." *Id.* (incorporating 48 C.F.R. §52.236-6). Also, "the Contractor shall take necessary steps, and provide all necessary materials, devices and procedures to protect the safety of the public and of Government personnel." *Id.* (incorporating 48 C.F.R. §52.236-13). McElwee/Tri-State was also required to prepare and submit "a practicable schedule showing the order in which the Contractor proposes to perform the work, and the dates on which the Contractor contemplates starting and completing the several salient features of the work." *Id.* (incorporating 48 C.F.R. §52.236-15). Moreover, McElwee/Tri-State assumed all liability for any damage as a result of its fault or negligence, and was responsible for complying with any "municipal laws, codes, and regulations applicable to the performance of the work." *Id.* (incorporating 48 C.F.R. §52.236-7). This factor clearly weighs in favor of independent contractor status.

Further, the declaration of Timothy Roth, the Residential Engineer for the Southeast Louisiana Flood Control Project supports the finding that McElwee/Tri-State are independent contractors. First, the Contract required that the contractor complete the project no later than 500 days from the date of the contractor's receipt of the Notice to Proceed from the government. Roth Decl., ¶ 11. Mr. Roth also states that Ellis Jackson, the McElwee/Tri-State Project Superintendent, and the other on-site supervisors of McElwee/Tri-State were responsible for the day-to-day supervision of work and the employees.[2] *Id.* at ¶14. Additionally, Mr. Roth states that

---

[2] Indeed, in the deposition testimony of Ellis Jackson, which was attached as Exhibit 5 to the Plaintiff's opposition memorandum, Mr. Jackson is asked whether Mr. Falati "ever [gave] directions of what needs to be done," and Mr. Jackson answered "No."

McElwee/Tri-State was responsible for the safety of its employees, its subcontractors and their employees, and anyone who was on the construction site to do business with McElwee/Tri-State. *Id.* at ¶ 16. These facts also support the conclusion that McElwee/Tri-State was an independent contractor, and, as a result, the United States is not liable for their negligence.

The Plaintiff does not argue that McElwee/Tri-State is not an independent contractor, rather the Plaintiff argues that Mr. Falati was at the construction site every day to inspect the job and report any problems to the United States so that the United States could provide orders to McElwee/Tri-State in order to resolve the issues. The Declaration of Mr. Roth confirms these facts: Mr. Roth identifies Mr. Falati as the only Corps employee who would be at the project site on a daily basis. Roth Decl., ¶ 20. Mr. Falati's sole purpose was to inspect McElwee/Tri-State's work and ensure for the government's Contracting Officer that the work being performed under the supervision of McElwee/Tri-State was in compliance with the terms of the Contract. *Id.* The affidavit of Mr. Ellis Jackson, submitted by the Plaintiff, does not contradict this these facts. Mr. Jackson states "the Corps documents things if things are in compliance, not in compliance. If it's not in compliance they are going to stop work.... Their job is to watch everything every day, quality control, safety, on and on, all those things, and that's what they do." Pl. Memo. Opp., Ex. 5, p. 96. Plaintiff argues that Mr. Falati had knowledge of the sinkhole problem on a daily basis and had a duty to report this problem to the United States; according to the Plaintiff, Mr. Falati breached this duty. Essentially, Plaintiff argues that the United States negligently performed their inspection function.

Under the Contract, the United States had the right to inspect "and test all places and at all

reasonable times before acceptance to ensure strict compliance with the terms of the contract."
Roth Decl., Attach. A, Contract No. DACW29-01-C-0035, Section 700 (incorporating 48 C.F.R. §52.246-12).  Courts have consistently held that this clause does not impose a duty on the government that is enforceable by third parties.  *See, e.g.*, *Alexander v. United States*, 605 F.2d 828, 833-34 (5th Cir. 1979) (government monitoring of safety program pursuant to contract does not convert independent contractor into joint venturer with government); *Rowell v. United States*, No. 89 Civ. 8418, 1992 WL 315653, *2 (S.D.N.Y. Oct. 16, 1992) (holding that incorporating 48 C.F.R. § 52.246-12 does not impose liability on the government).  In fact, courts have held that allegations that the United States was negligent in this method of inspection to ensure safety fall within the discretionary function exemption to the FTCA, and, as a result, federal courts do not have subject matter jurisdiction over such claims. *See, e.g. Kandarge v. U.S. Dep't of Navy*, 849 F. Supp. 304, 307-10 (D.N.J. 1994) (holding that court has no jurisdiction to hear claims alleging government failed to implement safety regulations).  To the extent that the Plaintiff's claims against the United States are based on the alleged negligence of Mr. Falati in failing to inspect the work area, the Court has no subject matter jurisdiction to consider such claims.

     **B.**     **Premises Liability**

In a FTCA action, the district court applies the law of the state in which the claim arises. *Cleveland ex. rel. Cleveland v. U.S.*, 457 F.3d 397, 403 (5th Cir. 2006).  The Louisiana Supreme Court, prior to the enactment of La. Civ. Code art. 2317.1, defined premises liability, stating that under Louisiana law

> in an action asserting strict liability as grounds for recovery, the plaintiff bears the burden of proving 1) the thing which caused damages was in the care, custody and control of the defendant; 2) the thing had a vice or defect which created an unreasonable risk of

harm; and 3) the injuries were caused by a defect.

*Sistler v. Liberty Mutual Ins. Co.*, 558 So.2d 1106, 1112 (La. 1990).  Further, a plaintiff that asserts a claim against a premises owner based on negligence pursuant to La. Civ. Code. art. 2315 where the sole basis alleged for holding the defendant liable is his relation to the property bears the same burden plus the additional burden of proving the defendant's scienter.  *Id.* at 1112 n.7 (*citing Kent v. Gulf States Utilities Co.,* 418 So.2d 493 (La. 1982).  However, with the enactment of La. Civ. Code art. 2317.1, strict liability claims under Article 2317 were effectively turned into negligence claims.  *Reitzell v. Pecanland Mall Assoc., Ltd.*, 852 So.2s 1229, 1232 (La. App. 2 Cir. 2003).

As stated above, the Plaintiff alleges in his Amended Complaint that his fall was a direct result of the gross negligence of McElwee, Tri State, the Corps, the Sewerage and Water Board and/or Glavin for failing to maintain safe premises; failing to repair defective grounds; failing to warn of possible danger; in allowing a negligent and hazardous situation and conditions to exist; failing to discover the hazardous situation; failing to use proper maintenance of the property and grounds to assure its safe use; failing to use proper care in working the area of the episode; failing to properly inspect said property and grounds to assure that it was fit for its intended purpose; acting in a careless and negligent manner without regard for the suffering of others; and other acts of negligence of omissions.

The Plaintiff further avers that these Defendants are strictly liable for the grounds on which they own and control, at all times pertinent, and that all of the Defendants' acts of negligence are in violation of Louisiana Civil Code Articles 2315, 2316 and 2317 and Orleans Parish ordinances.

The United States argues that Plaintiff's claims are based upon strict liability or premises

liability, and that the FTCA has not waived the United States' immunity from such claims. *See, e.g.*, *Perkins*, 1999 WL 148442, at *2 ("[A]lthough the Fifth Circuit has not addressed the issue...I agree...that the FTCA does not permit suits for general premises liability to the extent that such theories resemble strict liability."); *Cupit,* 964 F.Supp. at 1112 (dismissing claims against United States "to the extent that they are founded on general state law premises liability."); *Charles*, 2007 WL 925899 at *2 ("[T]he FTCA does not permit claims alleging premises liability, but does permit claims of negligence where specific government employees are alleged to be negligent.") In his response, Plaintiff does not contest this statement of law, rather he insists that the complaint alleges negligence of employees of the United States. But, as stated above, to the extent that Plaintiffs' alleges that Mr. Falati was negligent, this Court does not have subject matter jurisdiction to consider them.

At least one court in this Circuit has held that the United States may be liable based on premises liability. In *Jamison*, an attorney sued the United States after a chair he sat in at the Eastern District of Louisiana courthouse broke causing him injury. 2007 WL 1670986 at *1-*3. The plaintiff alleged that the premises were owned and controlled by the Administrative Office of the United States Court and that the person responsible was an employee of the United States acting in the course and scope of his employment. *Id.* at *6. The United States argued that the plaintiff's claims was based on premises liability in that the complaint failed to allege that specific individuals were negligent in any manner. *Id.* The court held that this was a case of premises liability under a negligence theory, but held that the court had jurisdiction. *Id*. at *7. First, the court stated that under Louisiana law, strict liability based on premises liability has been abolished and that the plaintiff did not argue that the United States was strictly liable. *Id.* at *8. Second, the

court found that, based on the facts of the case, that the Fourth Circuit's decision in *Berkman v. United States*, did not preclude the court from exercising jurisdiction. *Id.*

The Court finds the facts of this case more comparable to those in *Berkman*. In *Berkman*, an individual who was injured when he slipped and fell on a metal plate between a mobile lounge and terminal at Washington's Dulles International Airport sued the United States. 957 F.2d 108, 110 (4th Cir. 1992). The plaintiff alleged that the United States was negligent in failing to take certain action (such as lubricating certain doors and keeping the area clean), and the United States responded arguing that a third party independent contractor was responsible and thus the United States was immune under the FTCA. *Id.* The plaintiff argued that, because the owner has a nondelegable duty to invitees to keep the premises safe, the United States was liable. *Id.* The court was faced with the question of whether the independent contractor exception limited the United States' liability, and the court held that it did. *Id.* The court stated that "[t]he establishment of ... a scheme in which ... the focus [is placed] upon the person or entity whose tortious conduct a plaintiff seeks to impute to the United States ... necessarily forestalls any notion that the government becomes liable, itself, for a generalized breach of duty." *Id.* at 113. Further, "the FTCA requires a ... focused approach that requires the courts to determine the relationship to the United States of actor whose negligence might be imputed to the government under state law." *Id.* at 113-114. The Court is persuaded by the reasoning of *Berkman*, and to the extent that the Plaintiff's claims against the United States are based on general premises liability, in this context, the Court has no subject matter jurisdiction to consider such claims.

**V.	Conclusion**

Accordingly, IT IS ORDERED that the Defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is GRANTED.

New Orleans, Louisiana, this  6th  day of August, 2007.

								_____
								UNITED STATES DISTRICT JUDGE